## SCHNARE v. GEHMAN.

1. DIVISION FENCE.  The plaintiff and defendant occupied adjoining
lands ; the defendant, having eighty rods of rail fence on the dividing
line, alleged that he did not wish to keep up the entire partition fence
at his own expense, and served a written notice upon plaintiff,
requiring him to build one-half, whereupon the plaintiff built forty
rods of post and board fence, commencing at the south end of the
rail fence.  The defendant, subsequently, at different times, removed
portions of the rail fence from the dividing line, each time exposing
plaintiff's grain, and compelling him to build more fence ; this was con-
tinued until plaintiff had built one hundred and sixty rods of fence,
extending the whole length of the dividing line between their lands ;
*Held*,

1. That plaintiff was authorized to infer from the notice and the
circumstances under which it was given, that he was to build and
maintain but one-half of the fence, and that defendant agreed to
either build the other half himself, or to permit so much of the old one
as was necessary to remain as a division fence.

2. That plaintiff was entitled to recover of defendant one-half the
value of the partition fence.

3. That the court did not err in instructing the jury, that if they
found that defendant received a benefit by the construction of such
fence; that he had joined his own fence to the same, and that it pro-
tected his land, that they should return a verdict for plaintiff for the
value of one half the fence.

*Appeal from Scott District Court.*

THURSDAY, OCTOBER 13.

Action for the value of one-half of a partition fence.  The
material facts appear from the opinion of the Court.

*Frank Plummer* and *Geo. M. Van Hosen,* for the appel-
lants.

There is no legal obligation on tenants of adjoining farms
to make, maintain or repair partition fences, save such
as is created and imposed by statute, by agreement, or by
prescription ; and the right to compel an adjoining owner to
build and maintain a partition fence, or a portion thereof, or
to pay for such portion, if built by a coterminous proprie-

tor, is derived from the statute, or is created by agreement or prescription. 3 Kent 438; 39 Maine 528. When a statute gives a new right, and prescribes the remedy, that remedy to be available, must be strictly pursued. The right to build a partition fence and charge the adjoining owner for half the cost thereof, being a new right given by the statute, the remedy the statute prescribes, must be strictly pursued. Before that right can be enforced, all the requirements of the statute must be complied with. 39 Maine 528; *Rowe* v. *Beale*, 15 Sick. 123–125 ; Code of 1851 chapter 52; *Rust* v. *Low*, 6 Mass. 100.

*J. N. Rogers*, for the appellee.

I. The sole question in this case, and which is raised in different forms by the various instructions prayed for by the defendant, is, can one of two adjoining owners, under any circumstances, recover from the other, his porportion of the expense of building a division, or partition fence between them, without having called in the fence viewers, or taken any of the proceedings prescribed by the various sections of chap. 52, Code? Appellant maintains the negative. The court below ruled otherwise, and held, that in the various cases hypothetically stated in the judge's charge, the action might be maintained, without the intervention of the fence viewers. The jury by their verdict have established, that one, or the other, of these supposed states of facts, existed, and there can be no serious question that the evidence warranted such finding. Unless the instructions do not correctly state the law, the judgment must be affirmed.

II. The common law of England, that no one is bound to fence his land except by agreement or prescription, has never been in force in this state. *Wagoner* v. *Bissell*, 3 Iowa. The Code, section 895, recognizes and establishes the obligation of adjoining proprietors to maintain division fences in equal shares. The fence being for the equal benefit of both proprietors, it is equitable that the burden be borne by both in equal proportions. And if one has been

obliged to pay more than his share, the law raises an implied assumpsit on the part of the other to repay it. It is analagous to the case of a *party wall*. *In re* Rens. & Sar. R. R. Co., 4 Paige 553: *Campbell* v. *Mosier*, 4 Johns. Ch. 334.

III. There are no negative words in the statute. The language is, the party "*may*," (not *must*) apply to the fence viewers, &c. The aggrieved party must take the steps prescribed by the statute in order to recover interest at one per cent a month (section 897), or *double* damages (section 899). But the statute does not preclude any other remedy. *Walker* v. *Watrons*, 8 Ala. 493.

IV. The defendant in this case, having himself recognized his own obligation to maintain half the division fence, by notifying the plaintiff to build *his* half and the plaintiff *having been led to act* on that notice, and to comply with it, defendant is estopped from now contending that he was not bound to build half the fence, because the formalities of the statute had not been observed when defendant notified plaintiff to build *half* of the fence; this necessity implied that he himself would build the remaining half. *Half* of a fence of itself is of no use.

V. If any section of the Code governs the case, it is section 898, which provides for calling in fence viewers, when a *controversy* has arisen about the *obligation to erect* and maintain partition fences. In this case, the only controversy is, that defendant, after the fence is built by plaintiff, in compliance with *his notice*, refuses to pay his share of the expense. *Willoughby* v. *Carleton*, 9 Johnson 136.

STOCKTON, J.—The parties were the owners and occupiers of adjoining lands. Gehman made the first settlement and improvement, and when Schnare commenced to occupy his land, Gehman had a rail fence on his western line, being the dividing line between his land and the land of Schnare.

In February, 1855, Gehman alleging that he did not wish to keep up the division fence at his own expense, served a written notice on Schnare to build one-half of this fence.

Schnare accordingly built forty rods of post and board fence at the south end of the land.

In October, 1856, Gehman sold his land to one Walker, except a strip sixteen feet wide next to Schnare, and extending throughout the tract. Walker then took up the rail fence built by Gehman and removed it sixteen feet west to his own line. He occupied the land until the fall of 1857, when he re-sold it to Gehman. Gehman took up a portion at the south end of the fence built by Walker, and removed it to within four or five feet of the board fence built by Schnare. The removal of this fence by Gehman, left the fields of Schnare open, and cattle got in so that he was compelled to build forty rods more of fence, to protect his grain. In the spring of 1858, Gehman left his fence open at the north and south ends of the lane, so that cattle came in through the lane upon the land of Schnare, who again went to work and built eighty rods more of fence, making one hundred and sixty rods in all, and extending the whole length of the dividing line of the parties.

This suit was brought by Schnare, before a justice of the peace, to recover of Gehman the price and value of one-half of this fence. There was a judgment in his favor before the justice, and on appeal to the District Court, exception was taken by the defendant to certain instructions given to the jury, and to the refusal of the court to instruct the jury as requested by the defendant. There was a verdict and judgment for the plaintiff.

By the Code, section 895, the adjoining owners of enclosed land, are required to build and maintain one-half of all division fences, unless otherwise agreed between them. The plaintiff was authorized from the terms of the notice and the circumstances under which it was given, to infer that he was to build and maintain but one-half of the division fence. This was all the law required of him, and upon his erecting his portion, he had the right to expect that defendant would keep up the remainder.

The notice to plaintiff was not in so many words an agree-

ment to that effect; but from the fact that defendant owned at the time, the fence upon the division line, and from his remarks to the plaintiff at the time the notice was given, that he did not wish to keep up the whole of the fence at his own expense, the plaintiff was authorized to infer as the agreement between the parties, that if he built one-half of the fence, the defendant would either build the other half himself, or would permit so much of his own fence, as was necessary for that purpose, to remain as a division fence.

The defendant however was not satisfied with such an arrangement.    He seems to have resolved in his own mind that the plaintiff should build and maintain the whole of the division fence.    When the plaintiff's one-half had been built, defendant by removing his own fence and leaving a portion of his own uninclosed, compelled the plaintiff for his own security, to build the whole of the division fence.    It is not necessary to enquire upon what motive he acted, but the fact is none the less apparent, that while the fence owned and erected by the defendant would have answered the purpose of a division fence, he evinced his unwillingness that plaintiff should derive any use or advantage from it : *first*, by procuring Walker to remove it from off the division line ; *secondly*, by letting down the bars at the ends of the lane, and leaving his own lands exposed, and thus exposing the land of the plaintiff.

The court, we think, properly left it to the jury, to determine whether defendant received a common benefit from the fence built by the plaintiff; whether he had joined his own fence to the same, and whether it protected his land as it did that of the plaintiff; and directed them, if they found that such facts existed, to return a verdict for the plaintiff for the cost of one half of the division fence.

As the defendant without availing himself of the provisions of the statute in relation to fence viewers, gave notice to plaintiff to build one half of the division fence between their lands, and as the plaintiff in compliance with the notice built one-half of the fence, we think the District Court cor-

rectly charged the jury that if the defendant failed to erect and maintain the other half of the fence, and by such failure rendered it necessary for plaintiff to build the whole, if defendant has received the benefit of this fence in common with the plaintiff, he cannot defeat the plaintiff's action to recover one-half the cost of the fence, by objecting that it was not built by the requirements and under the directions of the fence viewers of the township.

The sale of the land by the defendant to Walker, after the notice was given by him to the plaintiff to build the one-half of the division fence, does not affect the relations of the parties, nor change the questions at issue between them. The defendant still retained a strip of land adjoining the plaintiff's land, sixteen feet wide, and it was by arrangement with Walker that the fence was removed sixteen feet further east, so as to be upon the line of the land sold to Walker.

As the questions of fact were left to the decision of the jury, and we think there was sufficient evidence to authorize the verdict, the motion for a new trial was correctly overruled.

Judgment affirmed.