VIRGIL BERRY *v.* S. P. & JOHN J. JONES.

[63 South. 341.]

1. FRAUDS, STATUTE OF. *Interest in land. Contract. Construction of line fence. Adjoining owners. Witnesses. Good character.*
   A contract or agreement by owners of adjoining lands to erect a fence on the dividing line, and to share the cost thereof is not "a contract for the sale of lands," is not within the statute of frauds and need not be in writing.

2. WITNESSES. *Proof of good character. Civil cases.*
   It is not permissible in civil cases to prove good character.

APPEAL from the circuit court of Hinds county.
HON. W. A. HENRY, Judge.
Suit by S. P. and John J. Jones against Virgil Berry. From a judgment for plaintiffs, defendant appeals.
The facts are fully stated in the opinion of the court.

*W. J. Croom* and *Powell & Thompson,* for appellant.

On the assignment of error that the court erred in excluding the testimony as to the general reputation of ap-

pellant, for truth and veracity in the community in which he lived, testified to by some of the best white citizens in this county, I have this to say: That this was an issue between appellees, who were white men, and an old negro man, the appellant, who lived here all of his life, and I say that his character along this line was relevant and pertinent, and I know of no rule of law forbidding him putting his character in issue along this line, and I firmly believe that the court erred in excluding the testimony of his good character.

I submit that when the court would not allow us to prove that the appellant did not use the fence at all that this was error upon the part of the court, because this evidence went to show and bore on the question of its being unreasonable that appellant would buy a fence that he had no use for and did not use.

Now all of the foregoing argument, as the court will perceive, has been made on the claim of a parole or verbal agreement, claimed by appellees.

Now I submit to the court that in order for appellees to maintain this suit, that the contract should have been in writing, and a contract of the kind claimed in this suit, resting in parole, is repugnant to section 2763 of the Code of 1906 because the sale of a half interest in a fence, built on a line post sunk in the ground, is an estate in land, and cannot be conveyed in any way for a term of more than one year, unless the conveyance or contract be declared by writing, signed and delivered.

This court in the case of *Weems* v. *Mayfield* said the above section forbids a verbal agreement between two adjoining proprietors, that a division wall, built in part upon the land of each, shall be the sole property of one of them. Now it makes no difference in the law that only one-half of the fence was conveyed instead of the whole. The fence is realty and being on the line, the width of the fence cuts no figure, it may be as wide as a division wall

of a building, or it may be as wide as the thickness of
the post set in the ground, a part resting on each ad-
joining owner's land.  See *Weems v. Mayfield*, 75 Miss.
286, 22 S. R. 892.

I say, as was said in this case above cited, that the
word "land" includes not only the face of the earth, but
every thing under it and over it, its unvarying principle
is that he who possesses land possesses also that which is
above it, and I say that a fence built upon land by posts
being set in the ground, and built as the fence which is
described in this suit, is considered in law a part of the
land, and being built on the dividing line, a sale of any
interest in this fence, by appellees to appellant or the
contract sued upon by appellees in this case should have
been in writing, signed and delivered.

*Watkins & Watkins*, for appellees.

It is the contention of counsel for the appellees, and
was the view of the trial court, that testimony as to the
reputation of Virgil Berry, the defendant in the case, for
truth and veracity in his community was not under any
theory admissible and should not go to the jury in a case
of this nature.  Counsel for appellant have cited no au-
thority to sustain this assignment of error, and in fact,
can cite no authority for the admissibility of the intro-
duction of character witnesses in a civil case of this na-
ture.  The reputation of Virgil Berry in this case was not
at stake.  It is generally held, and without exception so
far as we have been able to find, that in civil actions it is
irrelevant to show the good character of either party.
We could bring to this court a great array of citations sus-
taining this position, but we deem it absolutely unneces-
sary; but we do desire to put before the court the general
principles on this point as announced by the recognized
authorities on evidence.

In Jones on Evidence, page 177, paragraph 158 the gen-
eral rule upon this subject is very clearly announced.  It

is as follows: ''Proof of good character.—Upon the principles already stated, it is evident that in civil actions it is generally irrelevant to show the good character of either party. In most of the cases where the proof of the bad character of the plaintiff is allowed, it is only in mitigation of damages. There is no such ground for admitting testimony of good character. It has indeed been sometimes held that when the character is attacked by cross-examination, imputing misconduct or by proof of specific acts of misconduct, his good character becomes involved and may be shown as part of the main case or defense. The doctrine has even been maintained that in actions for slander and libel the plaintiff's character is put in issue by the very nature of the proceeding; that the plaintiff need not await the movements of the defendant, but may in the first instance prove his good character whether it is attacked or not; but by the weight of authority and the better reasoning, such evidence should not be received unless the reputation has been attacked by general evidence of bad character in those actions where character is in issue. The law presumes the character of a party to be good until the contrary is shown and he can safely rest on the presumption.''

In 1 Wigmore on Evidence, page 134, paragraph 64, the general and unanimously supported rule upon this subject is given as follows: ''Parties in civil causes; character generally excluded. It is today generally said that (subject to specific exceptions, some of them doubtful) the character of a party in a civil cause is inadmissible; i. e., that it cannot be used as it is for or against a defendant in a criminal case, to indicate the likelihood that the act in issue was or was not done. This is laid down as a general rule, to which a specific exception, if any, must be clearly made out. This result, to be sure, was not always so clearly an accepted one. But it is today almost everywhere accepted subject to one or two occasional exceptions. *Attorney-general* v. *Radloff*, 10

Exch. 97; *Thompson* v. *Church,* 1 Root, 312; MARSHALL, C. J., in *Etting* v. *Bank,* 11 Wheat, 59; HOSMER, C. J., *Stow* v. *Converse,* 3 Conn. 345; WARDLAW, J., in *Smets* v. *Plunket,* 1 Strobh. 372, 375; ALDIS, J., in *Wright* v. *McKee,* 37 Vt. 163.

The only other ground of assignment of error discussed by appellant's counesl in their brief is that the appellees should not have and maintain their action because the contract was verbal, and as they say, repugnant to paragraph C of section 4775 of chapter 134 of the Laws of 1906, being the chapter on the statute of frauds, which section C is in the following language: "Upon any contract for the sale of lands, tenements or hereditaments, or the making of any lease thereof for a term longer than one year"

We submit, if it may please the court, that a reading of the record of this case will demonstrate to your minds, as it has to ours, that the contract sued upon in this case is not a contract for the sale of lands, tenements or hereditaments, but to the contrary, is simply a collateral verbal agreement, fully enforceable, in regard to the erection of a fence between two adjoining landowners.

This rule is laid down and announced in the standard authorities. "According to the weight of authority, parol evidence as to partition fences is binding upon the parties thereto." Vol. 19, Cyc. 471.

In the case of *Guyer* v. *Anson Stratton* (1861), 29 Conn. ——, the statute of frauds seems to have no application. An agreement between two parties charged by law with a common burden, as to the particular portion of it which each of them shall bear, is not a contract or agreement for the sale of lands, tenements or hereditaments, or any interest in or concerning them."

It will be borne in mind that paragraph C. of the statute does not say that all contracts relating to real estate shall be invalid unless they are in writing, but the statute says that all sales of real estate, tenements or heredit-

aments which are not in writing shall be invalid, and it is our contention in this case that collateral agreements relating to real estate, such as the contract in question, which was a cóntract between adjoining landowners to pay one-half the expense of the erection of a line fence, does not come within the statute, and is not repugnant thereto, and is not required to be in writing. *Baynes* v. *Chastain* (1879), 68 Ind. 376; *Bills* v. *Belknap* (1879), 38 La. 225; *Ivins* v. *Ackerman* (1876), 38 N. J. Law, 220.

This case also reminds us to call to the attention of the court that our own court has adopted the view of upholding the parol establishment of division lines. *Natchez* v. *Vanderveld,* 31 Miss. 706; *Archer* v. *Helm,* 69 Miss 730; *Pipes* v. *Buckner* (1876), 51 Miss. 848.

The same question which presented itself to Chief Justice Beasley in the case of *Ivens* v. *Ackerman,* just quoted from above as to why a collateral agreement in regard to a division fence should be required to be in writing, when his own court, as has our court, adopted the view that verbal settlement by the owners of contiguous lands of the boundary line between their possessions is absolutely conclusive, is a question which, to our mind, cannot be satisfactorily answered by counsel for appellant in this case.

In the case of *Blood* v. *Spaulding* (1885), 57 Vt. 422, it is held, and in fact, has been repeatedly held in that state, that adjoining landowners may, by parol, make agreements for the division of fences that will be binding upon them until repudiated. *Scott* v. *Grover,* 56 Vt. 499; *Hitchcock* v. *Tower,* 55 Vt. 60; *Tupper* v. *Clark,* 43 Vt. 200.

The rule is further found in 5 Cyc., page 931.

Cook, J., delivered the opinion of the court.

Appellees were plaintiffs below in a suit to recover from appellant his proportion of the costs of a division fence between his land and that of plaintiffs. Plaintiffs' evidence goes to show that, before the fence was built,

plaintiffs and defendant orally agreed to share the cost of the fence. The jury rendered its verdict for plaintiffs, and judgment was entered accordingly. From this judgment, this appeal is prosecuted.

We do not think that the contention of appellant that he was entitled to a peremptory instruction is maintainable. The evidence was conflicting, and the jury accepted plaintiffs' verson of the contract, and this court is not authorized to overrule the jury on the facts.

Section 4775, Code of 1906, in paragraph "c" provides that "an action shall not be brought whereby to charge a defendant . . . upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one year, . . . unless . . . the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith."

It is contended that a contract or agreement by the owners of adjoining lands to erect a fence on the dividing line, and to share the costs thereof, is "a contract for the sale of lands," and such contract must be in writing and signed by the defendant before an action can be maintained thereon against the promisor. This point seems never to have been presented to this court, but has been considered by the courts of some of our sister states.

The rule is thus stated in volume 19, page 471, of Cyc.: "According to the weight of authority, parol evidence as to partition fences is binding upon the parties thereto."

In *Guyer* v. *Anson Stratton*, 29 Conn. 421, it is said: "It is worthy of notice also that although this subject of fences, of so great interest to our people, has engaged the attention of our legislators ever since the first settlement of the country, no statute has in terms made it necessary that a division agreed to and acted upon by the parties themselves, should be written or recorded. . . . The statute of frauds seems to have no application. An agree-

ment between two parties charged by law with a common burden, as to the particular portion of it which each of them shall bear, is not a contract or agreement for the sale of lands, tenements or hereditaments, or any interest in or concerning them.''

It would seem, without authority, that appellant's application of the statute of frauds is strained, and certainly not within the letter of the statute. However, the same point has been raised in several states and adjudicated by the appellate courts. See *Ivins* v. *Ackerson,* 38 N. J. Law, 220; *Baynes* v. *Chastain,* 68 Ind. 376; *Bills* v. *Belknap,* 38 Iowa, 225. We think the following decisions of this court put us in line with the reasoning adopted by the courts in the cases just cited, viz.: *Natchez* v. *Vanderveld,* 31 Miss. 706, 66 Am. Dec. 581; *Archer* v. *Helm,* 69 Miss. 730, 11 South. 3; *Pipes* v. *Buckner,* 51 Miss. 848.

After plaintiff had given his version of the facts, and defendant had testified in direct variance, defendant offered witnesses to prove his general character for truth and veracity. The trial court sustained an objection to this evidence, and this action of the court is assigned as error. So far as our investigation has disclosed, this point has not been before this court in the past, and for this reason we will announce the rule for the future guidance of trial courts. The leading text-writers are in accord with the trial court's view of the law, and announce as a general rule that proof of good character is not pertinent in civil cases. Jones on Evidence, page 177; Wigmore on Evidence, volume 1, page 134. That this is the correct rule, and is approved by the great weight of authority, is certain. *Etting* v. *Bank,* 11 Wheat. (U. S.) 59, 73, 6 L. Ed. 419.

Lastly, it is suggested that defendant, being a poor gentleman of color, and a native, and plaintiffs being bankers, and not having had the advantage of being born in Mississippi, the jury were, therefore, wrong when they decided in in favor of plaintiffs. We are bound to as-

sume that the jury fairly and carefully considered this phase of the case, and no doubt they presumed that, had the plaintiffs been consulted about the state of their birth, they would have undoubtedly selected this state; but, inasmuch as they were not given this preference, it would be unjust to handicap them with a mishap for which they are not responsible.

*Affirmed.*